**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>    Markus Corp,<br><br><br>Debtor(s). | Case No.: 25-03310<br><br>Chapter 11<br>Subchapter V<br>Hon. Timothy A. Barnes |

**DEBTOR'S AMENDED SUBCHAPTER V PLAN OF REORGANIZATION**
**DATED: OCTOBER 28, 2025**

**BACKGROUND OF CASE FILED UNDER SUBCHAPTER V**

A.   **Description and History of the Debtor's Business**

    **(i) Past Operations**

    The Debtor, a closely held trucking company operating three semi-tractors, was founded in 2015 by its current president, Marek Kusmierczyk. The Debtor was consistently profitable before the COVID-19 pandemic. Pandemic-related shutdowns idled the fleet for an extended period. To sustain operations, the Debtor resorted first to high-fee Merchant Cash Advances (MCAs) and later refinanced those obligations through a loan with the U.S. Small Business Administration's EIDL program. However, after the pandemic, broker-controlled freight rates remained depressed, operating costs—fuel, insurance, and maintenance—continued to rise, and too many owner-operators in the industry intensified competition, keeping profitability low. To stay afloat, the Debtor incurred new MCAs and private loans. In 2023 it obtained a loan from Village Bank & Trust, N.A. that both refinanced MCAs and funded the purchase of a third tractor (still in the fleet). Despite owner cash infusions from the sale of personal assets, falling margins triggered creditor collections actions, a lawsuit, and a threat of repossession against the newest truck.

    **(ii) Present and Future Business Plan**

    At this point in time, without the threat of lawsuits and collections actions, the Debtor is operating its full three-truck fleet and once again generating consistent revenue. The Debtor has developed a strong relationship with its freight broker which provides regular work to sustain the company. The relationship shields the Debtor from the struggle to secure loads from predatory brokers. The Debtor is working with its broker to secure regular and consistent loads for the third semi-truck to reach peak operations.

To sustain profitability, the Debtor still needs to resolve its debt and requires this Chapter 11 Subchapter V Plan ("Plan") to scale back the amount of secured debt in line with the scheduled value of its assets, and the income stream it can realistically produce. Management acknowledges that the current tariff environment adds a layer of uncertainty for closely held trucking companies, and it will continue to monitor and adjust strategies as conditions evolve. At this time, projections show that the Debtor has sufficient work to maintain the payments as proposed in this Plan which will pay creditors from the continued operations of the Debtor. A liquidation of the Debtor will result in no payment to unsecured creditors and as such, creditors will be better served by supporting the Plan, which proposes an unsecured dividend of approximately 3% over 3 years.

**B.     Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A**. The analysis provides that all assets are encumbered by liens and there would be no distribution to unsecured creditors in a chapter 7 liquidation.

**C.     Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Debtor must also show that it will have enough cash over the life of the Plan to make the required plan payments and operate the Debtor's business. The Debtor has provided projected monthly and yearly financial projections as Group **Exhibit B.** The Debtor's financial projections show that the Debtor will have projected net income over 3 years for plan payments of approximately $37,800.00 in year 1, $37,800.00 in year 2, and $37,800.00 in year 3. Plan payments to the non-priority unsecured class will be made on a quarterly basis beginning at the end of the third quarter of 2025 (September 30, 2025) and in each quarter thereafter for 3 years. The final plan payment is expected to be paid at the end of the second quarter of 2028 (June 30, 2028).

The basis of the income projection is from an analysis of post-petition operations and the current trucking industry environment, as discussed above. The Debtor is not projecting increases in income due to the uncertainty in the trucking industry at this time and for the foreseeable future.

**ARTICLE I**
**SUMMARY**

This Plan under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor from cash flow generated by its business operations.

This Plan provides for:

|  | 1 class of administrative and priority claims, consisting of 1 tax priority claim: | (a) Professionals and Trustees;<br>(b) Department of Treasury - Internal Revenue Service |
|---|---|---|
|  | 1 class of secured claims, consisting of 3 claims: | (a) U.S. Small Business Administration;<br>(b) Village Bank & Trust, N.A.; and<br>(c) TimePayment Corp. |
|  | 1 class of non-priority unsecured claims; and |  |
|  | 1 class of equity security holders |  |

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 3 cents on the dollar. This Plan also provides for the full payment of administrative and priority tax claims.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

| 2.01 | Class 1 | All allowed claims entitled to priority under § 507 of the Code unless otherwise classified herein (except administrative expense claims under § 507(a)(2)), and priority tax claims under § 507(a)(8). |
|---|---|---|
|  | Class 1(a) | Administrative claims of professionals and trustees. |
|  | Class 1(b) | Department of Treasury – Internal Revenue Service consistent with § 1129(a)(9)(C) of the Code. |
| 2.02 | Class 2 | Secured Claims |
|  | Class 2(a) | U.S. Small Business Administration to the extent allowed as a secured claim under § 506 of the Code. |
|  | Class 2(b) | Village Bank & Trust to the extent allowed as a secured claim under § 506 of the Code. |

|      |          |                                                                                                                                                                                 |
|------|----------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|      | Class 2(c) | TimePayment Corp. to the extent allowed as a secured claim under § 506 of the Code. |
| 2.03 | Class 3  | Non-Priority Unsecured Claims: Allowed claims of creditors which are unsecured, including unsecured claims of the U.S. Small Business Administration, Village Bank & Trust, N.A., and TimePayment Corp. |
| 2.04 | Class 4  | Equity interests in the Debtor. |

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

| 3.01 | Administrative Expense Claims | Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full in monthly payments over a period of no more than 12 months. |
|------|-------------------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 3.02 | Priority Tax Claims           | Each holder of a priority tax claim will be paid in terms consistent with § 1129(a)(9)(C); see Section 4.01, Class 1(b)). |

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|-------|------------|-----------|
| Class 1(a) | Unimpaired | Administrative claims of professionals and trustees payable in full at confirmation after Court approval, or by agreement of those professionals. |
| Class 1(b) | Impaired | Priority claim filed in this case by the Department of Treasury - Internal Revenue Service (Claim No. 2) in the amount of $3,004.37 of which $391.04 is asserted as priority for interest due through the Petition Date. The priority portion of the IRS Claim will be paid in full plus interest at a rate of 3% per annum in 4 monthly installments commencing on or before the Effective Date of the Plan. The remainder of the claim ($2,613.33) is asserted as unsecured for outstanding taxes, interest, and penalties due to the IRS, and will be paid as a Class 3 Claim. |
| Class 2(a) — Secured claim of | Impaired | The U.S. Small Business Administration has one claim against the Debtor, Claim No.1 ($426,224.08) |

| | | |
|---|---|---|
| the U.S. Small Business Administration | | The obligation will be treated as a secured obligation in the amount of $100.00, less the sum of adequate protection payments made as of the Effective Date of the Plan and represents the fair market value of the collateral securing the claim. If lender disputes the value of the collateral stated above, it must timely file an objection to confirmation, or the value stated by the Debtor will be determined to be the value of the collateral. This balance will be amortized over 1 month with interest at the contract rate of 3.75% per annum. The Debtor will make 1 monthly payment of $101.25 commencing on the fifteenth day of the first full month following the Effective Date of the Plan. The U.S. Small Business Administration will have a non-priority unsecured claim in the amount of $426,124.08 which will be treated and paid as a Class 3 Claim. |
| Class 2(b) — Secured claim of Village Bank & Trust, N.A. | Impaired | Village Bank & Trust, N.A. has one claim against the Debtor, Claim No. 3 ($269,501.06). <br><br> The obligation will be treated as a secured obligation in the amount of $40,000, less the sum of adequate protection payments made as of the Effective Date of the Plan and represents the fair market value of the collateral securing the claim. If lender disputes the value of the collateral stated above, it must timely file an objection to confirmation, or the value stated by the Debtor will be determined to be the value of the collateral. The balance will be amortized over 36 months with interest at the contract rate of 9.00% per annum. The Debtor will make monthly payments of $1,156.22 commencing on the fifteenth day of the first full month following the Effective Date of the Plan and thereafter due on the fifteenth day of the month, with final payment of the outstanding principal and interest owed due with the last monthly payment. Village Bank & Trust, N.A. will have a non-priority unsecured claim in the amount of $229,501.06 which will be treated and paid as a Class 3 Claim. |
| Class 2(c) — Secured claim of TimePayment Corp. | Impaired | TimePayment Corp. has one claim against the Debtor, Claim No. 4 ($33,271.51). <br><br> The obligation will be treated as a secured obligation in the amount of $30,000.00, less the sum of adequate protection payments made as of the Effective Date of the Plan and represents the fair market value of the collateral |

| | | |
|---|---|---|
| | | securing the claim. If lender disputes the value of the collateral stated above, it must timely file an objection to confirmation, or the value stated by the Debtor will be determined to be the value of the collateral. This balance will be amortized over 36 months with interest at 7.50% per annum. The Debtor will make monthly payments of $868.82 commencing on the fifteenth day of the first full month following the Effective Date of the Plan and thereafter due on the fifteenth day of the month, with final payment of the outstanding principal and interest owed due with the last monthly payment. TimePayment Corp. shall have a non-priority unsecured claim in the amount of $3,271.51 which will be treated in Class 3. |
| Class 3 — Allowed non-priority unsecured claims, including unsecured claims of the U.S. Small Business Administration, Village Bank & Trust, N.A., and TimePayment Corp. | Impaired | Holders of allowed non-priority unsecured claims will receive approximately 3% of their claims, pro rata over 36 months. Unsecured dividends will be paid an estimated total of $28,000.00 in quarterly payments commencing with the end of the third quarter of 2025, with a final payment in the end of the second quarter of 2028. The estimated payment schedule is:<br><br>• $150.00 on September 30, 2025 (Q3 2025);<br>• $357.00 in the next quarter;<br>• $625.00 in the following quarter;<br>• $375.00 in the next quarter;<br>• $2,875.00 in the subsequent quarter; and<br>• $3,375.00 each quarter thereafter until the $28,000 total is satisfied. |
| Class 4 — Equity Security Holders of the Debtor | Impaired | Equity security holder will retain his interest in the Debtor |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

    5.01 **Disputed Claim**. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or un-liquidated.

    5.02 **Delay of Distribution on a Disputed Claim**. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03 **Settlement of Disputed Claims**. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 **Assumed Executory Contracts and Unexpired Leases**.

(a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the Effective Date:

(i)   Owner-operator equipment lease agreement with Exet, LLC;

(ii)  Equipment parking lease agreement with Freight Ninja, LLC.

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under Section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this Section must be filed no later than 30 days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01 **Responsibility for Implementation** — The Plan will be funded by the continued operations of the Debtor and income derived from operations of the Debtor as set forth on the projections attached as Group **Exhibit B**. Marek Kusmierczyk (Kusmierczyk) will remain President of the Debtor and remain responsible for the operations of the Debtor after Plan Confirmation. Should the Plan be confirmed under § 1191(a) Kusmierczyk will be responsible for plan payments. Should the Plan be confirmed under § 1191(b) payments will be made as described in Section 9.11 of this Plan.

7.02 **Post Confirmation Ownership** — The Debtor will continue to be owned 100% by Marek Kusmierczyk after confirmation of the Plan.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01 **Definitions and Rules of Construction.** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02 **Effective Date of Plan**. The effective date of this Plan is the first business day following the date that is 60 days after the entry of the confirmation order. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03 **Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04 **Binding Effect**. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05 **Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06 **Controlling Effect**. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Illinois govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

# ARTICLE IX
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain such jurisdiction over the Debtor and this chapter 11 case after the Effective Date as is legally permissible, including jurisdiction to:

9.01 **Claims** — Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of Claims.

9.02 **Professional Fees** — Grant or deny any application for a Professional Fee Claim, for allowance of compensation or reimbursement of expenses authorized pursuant to the Code or this Plan.

9.03 **Assumptions or Rejection of Executory Contracts** — Resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which either the Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising there from.

9.04 **Distributions Under the Plan** — Ensure that distributions to holders of allowed claims are accomplished pursuant to the provisions of this Plan.

9.05 **Subsequent Proceedings** — Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date, or brought thereafter by the Debtor.

9.06 **Plan Implementation** — Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan or the Confirmation Order, except as otherwise provided herein and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of this Plan or any entity's obligations created or incurred in connection with this Plan.

9.07 **Pre-Confirmation Modification of Plan** — Modify the Plan before or after the Effective Date pursuant to 11 U.S.C. § 1127 or any contract, instrument, release or other agreement or document created in connection with the Plan; or remedy any defect or omission or reconcile any inconsistency in any Court order, the Plan, or the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code.

9.08 **Interference with Implementation of Plan** — Issue, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of this Plan.

9.09 **Post - Confirmation Modification** — Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated or if distributions pursuant to this Plan are enjoined or stopped.

9.10 **All Matters** — Determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument release or other agreement or document created in connection with this Plan and enter any order concluding the Debtor's chapter 11 reorganization cases.

9.11 **Plan Payments Under § 1191(a)** — Should the Plan be confirmed under § 1191(a), the Debtor shall act as the Plan Disbursing Agent and make all payments to holders of allowed claims required by the Confirmation Order and the Plan.

**Plan Payments Under § 1191(b)** — Should the Plan be confirmed under § 1191(b), the Debtor shall remain the Disbursing Agent for all Plan payments.

# ARTICLE X
# DISCHARGE AND LIEN RETENTION

10.01 **Discharge** — (I) If the Debtor's Plan is confirmed under § 1191(a) of the Bankruptcy Code, on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in § 1141(d)(6).

(II) If the Debtor's Plan is confirmed under § 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

10.02 **Lien Retention** — Secured creditors will retain their liens until full payment of the secured portion of their claim. All other liens are extinguished upon confirmation of the plan. To the extent creditors are wholly unsecured, the liens shall be extinguished upon confirmation of the plan.

Dated: October 28, 2025

Respectfully submitted,

Markus Corp

By: <u>Marek Kusmierczyk</u>
    Marek Kusmierczyk, President and Plan Proponent

By: *<u>/s/ Arthur Corbin</u>*
    Arthur Corbin ARDC #6305658
    Attorney for the Debtor

Case 25-03310 Doc 68-1 Filed 10/29/25 Entered 10/29/25 09:10:07 Desc Ex A: Liquidation Analysis Page 1 of 1

**EXHIBIT A**

HYPOTHETICAL LIQUIDATION ANALYSIS
PERSONAL PROPERTY — Markus Corp, Case No. 25-03310

| ASSETS | VALUE AT FILING | SECURED CLAIM | COSTS OF SALE/COLLECTED | NET TO ESTATE |
|---|---|---|---|---|
| Cash Accounts | $432.55 | U.S. Small Business Administration ($426,224.08) | -0- | -0- |
| 2019 Volvo Semi-Truck | $40,000.00 | Village Bank & Trust, N.A.($269,501.06) | -0- | -0- |
| 2013 Volvo Semi-Truck (VIN: 4V4NC9EH8DN150175) | $15,000.00 | TimePayment Corp. ($33,271.51) | -0- | -0- |
| 2013 Volvo Semi-Truck (VIN: 4V4NC9EH4DN150173) | $15,000.00 | TimePayment Corp. ($33,271.51) | -0- | -0- |

Hypothetical Liquidation Value = $0.00

Case 25-03310   Doc 68-2   Filed 10/29/25   Entered 10/29/25 09:10:07   Desc  Ex. B:

**EXHIBIT B**

**Markus Corp, Case No. 25-03310**
**Monthly Income and Expense Projection for 12-Month Period**
**Assume Confirmation of July 1, 2025**

| | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | |
| Gross Trucking Income | 34,000.00 | 42,500.00 | 34,000.00 | 42,500.00 | 34,000.00 | 34,000.00 | 42,500.00 | 34,000.00 | 34,000.00 | 34,000.00 | 42,500.00 | 34,000.00 |
| **Total Income** | 34,000.00 | 42,500.00 | 34,000.00 | 42,500.00 | 34,000.00 | 34,000.00 | 42,500.00 | 34,000.00 | 34,000.00 | 34,000.00 | 42,500.00 | 34,000.00 |
| **Cost of Goods Sold** | | | | | | | | | | | | |
| Fuel for Hired Vehicles | 8,400.00 | 10,500.00 | 8,400.00 | 10,500.00 | 8,400.00 | 8,400.00 | 10,500.00 | 8,400.00 | 8,400.00 | 8,400.00 | 10,500.00 | 8,400.00 |
| **Total COGS** | 8,400.00 | 10,500.00 | 8,400.00 | 10,500.00 | 8,400.00 | 8,400.00 | 10,500.00 | 8,400.00 | 8,400.00 | 8,400.00 | 10,500.00 | 8,400.00 |
| **Gross Profit** | 25,600.00 | 32,000.00 | 25,600.00 | 32,000.00 | 25,600.00 | 25,600.00 | 32,000.00 | 25,600.00 | 25,600.00 | 25,600.00 | 32,000.00 | 25,600.00 |
| **Expense** | | | | | | | | | | | | |
| Heavy Highway Use Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,500.00 |
| Insurance Expense | 3,000.00 | 3,750.00 | 3,000.00 | 3,750.00 | 3,000.00 | 3,000.00 | 3,750.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,750.00 | 3,000.00 |
| Interstate Fuel Tax | 1,200.00 | 0.00 | 0.00 | 1,200.00 | 0.00 | 0.00 | 1,200.00 | 0.00 | 0.00 | 1,200.00 | 0.00 | 0.00 |
| Logbook Fee | 150.00 | 187.50 | 150.00 | 187.50 | 150.00 | 150.00 | 187.50 | 150.00 | 150.00 | 150.00 | 187.50 | 150.00 |
| Parking | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 |
| Repairs and Maintenance | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 |
| Subhaulers | 10,400.00 | 13,000.00 | 10,400.00 | 13,000.00 | 10,400.00 | 10,400.00 | 13,000.00 | 10,400.00 | 10,400.00 | 10,400.00 | 13,000.00 | 10,400.00 |
| On the Road Supplies | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| Plate Renewal | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,700.00 | 0.00 | 0.00 | 0.00 |
| Tolls | 900.00 | 1,125.00 | 900.00 | 1,125.00 | 900.00 | 900.00 | 1,125.00 | 900.00 | 900.00 | 900.00 | 1,125.00 | 900.00 |
| Trailer Rental | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| **Total Expense** | 20,550.00 | 22,962.50 | 19,350.00 | 24,162.50 | 19,350.00 | 19,350.00 | 24,162.50 | 19,350.00 | 25,050.00 | 20,550.00 | 22,962.50 | 20,850.00 |
| **Net Ordinary Income** | 5,050.00 | 9,037.50 | 6,250.00 | 7,837.50 | 6,250.00 | 6,250.00 | 7,837.50 | 6,250.00 | 550.00 | 5,050.00 | 9,037.50 | 4,750.00 |
| Net Income - Before Owners Draw | **5,050.00** | **9,037.50** | **6,250.00** | **7,837.50** | **6,250.00** | **6,250.00** | **7,837.50** | **6,250.00** | **550.00** | **5,050.00** | **9,037.50** | **4,750.00** |
| Owner's Salary for Driving Truck and Operating Business | (1,900.00) | (5,887.50) | (3,100.00) | (4,687.50) | (3,100.00) | (3,100.00) | (4,687.50) | (3,100.00) | 2,600.00 | (1,900.00) | (5,887.50) | (1,600.00) |
| **Net Income Available for Plan Payments** | **3,150.00** | **3,150.00** | **3,150.00** | **3,150.00** | **3,150.00** | **3,150.00** | **3,150.00** | **3,150.00** | **3,150.00** | **3,150.00** | **3,150.00** | **3,150.00** |
| Class 1(a) - Administrative Claims | 916.00 | 916.00 | 916.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 750.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Class 1(b) - Tax Priority Claim | 58.00 | 159.00 | 159.00 | 18.00 | | | | | | | | |
| Class 2(a) - SBA | 101.25 | | | | | | | | | | | |
| Class 2(b) - Village Bank & Trust | 1,156.22 | 1,156.22 | 1,156.22 | 1,156.22 | 1,156.22 | 1,156.22 | 1,156.22 | 1,156.22 | 1,156.22 | 1,156.22 | 1,156.22 | 1,156.22 |
| Class 2(c) - TimePayment Corp. | 868.82 | 868.82 | 868.82 | 868.82 | 868.82 | 868.82 | 868.82 | 868.82 | 868.82 | 868.82 | 868.82 | 868.82 |
| Class 3 - Non-priority unsecured claims | | | 150.00 | | | 358.00 | | | 625.00 | | | 375.00 |
| Class 4 - Equity Security Holders of the Debtor | | | | | | | | | | | | |
| **Total Plan Payments** | 3,100.29 | 3,100.04 | 3,250.04 | 3,043.04 | 3,025.04 | 3,383.04 | 3,025.04 | 2,775.04 | 3,650.04 | 3,025.04 | 3,025.04 | 3,400.04 |
| **Cumulative Balance** | 49.71 | 49.96 | 0.00 | 106.96 | 124.96 | 0.00 | 124.96 | 374.96 | 0.00 | 124.96 | 124.96 | 0.00 |

These financial statements represent a budget for July 2025 - June 2026 prepared based upon managements best estimates. These financial statements have not been subjected to an audit or review or compilation engagement, and no assurance is provided on them. Substantially all disclosures required by the cash basis of accounting have been omitted.

Page 1 of 1

Case 25-03310 Doc 68-2 Filed 10/29/25 Entered 10/29/25 09:10:07 Desc Ex. B: Yearly Income and Expense Projection for Life of Plan

**Markus Corp, Case No. 25-03310**

| | July 1, 2025 - December 31, 2025 | January 1, 2026 - December 31, 2026 | January 1, 2027 - December 31, 2027 | January 1, 2028 - June 30, 2028 |
|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | |
| Income | | | | |
| Gross Trucking Income | 221,000.00 | 453,050.00 | 464,100.00 | 239,785.00 |
| **Total Income** | 221,000.00 | 453,050.00 | 464,100.00 | 239,785.00 |
| Cost of Goods Sold | | | | |
| Fuel for Hired Vehicles | 54,600.00 | 111,930.00 | 114,660.00 | 59,514.00 |
| **Total COGS** | 54,600.00 | 111,930.00 | 114,660.00 | 59,514.00 |
| **Gross Profit** | 166,400.00 | 341,120.00 | 349,440.00 | 180,271.00 |
| Expense | | | | |
| Heavy Highway Use Tax | 0.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| Insurance Expense | 19,500.00 | 40,950.00 | 41,730.00 | 21,450.00 |
| Interstate Fuel Tax | 2,400.00 | 4,800.00 | 4,800.00 | 2,400.00 |
| Logbook Fee | 975.00 | 1,950.00 | 1,950.00 | 975.00 |
| Parking | 7,500.00 | 15,375.00 | 15,900.00 | 8,100.00 |
| Repairs and Maintenance | 13,800.00 | 28,980.00 | 29,532.00 | 14,904.00 |
| Subhaulers | 67,600.00 | 138,580.00 | 144,664.00 | 73,684.00 |
| On the Road Supplies | 900.00 | 1,800.00 | 1,800.00 | 900.00 |
| Plate Renewal | 0.00 | 5,700.00 | 5,700.00 | 5,700.00 |
| Tolls | 5,850.00 | 11,700.00 | 11,700.00 | 5,850.00 |
| Trailer Rental | 7,200.00 | 14,400.00 | 14,400.00 | 7,200.00 |
| **Total Expense** | 125,725.00 | 265,735.00 | 273,676.00 | 142,663.00 |
| **Net Ordinary Income** | 40,675.00 | 75,385.00 | 75,764.00 | 37,608.00 |
| **Net Income - Before Owners Draw** | **40,675.00** | **75,385.00** | **75,764.00** | **37,608.00** |
| Owner's Salary for Driving Truck and Operating Business | (21,775.00) | (37,585.00) | (37,964.00) | (18,708.00) |
| **Net Income Available for Plan Payments** | **18,900.00** | **37,800.00** | **37,800.00** | **18,900.00** |
| **Plan Payments** | | | | |
| Class 1(a) - Administrative Claims | 5,748.00 | 6,250.00 | 0.00 | 0.00 |
| Class 1(b) - Tax Priority Claim | 394.00 | 0.00 | 0.00 | 0.00 |
| Class 2(a) - SBA | 101.25 | 0.00 | 0.00 | 0.00 |
| Class 2(b) - Village Bank & Trust | 6,937.32 | 13,874.64 | 13,874.64 | 6,937.32 |
| Class 2(c) - TimePayment Corp. | 5,212.92 | 10,425.84 | 10,425.84 | 5,212.92 |
| Class 3 - Non-priority unsecured claims | 508.00 | 7,250.00 | 13,500.00 | 6,750.00 |
| Class 4 - Equity Security Holders of the Debtor | | | | |
| **Total Plan Payments** | 18,901.49 | 37,800.48 | 37,800.48 | 18,900.24 |

These financial statements represent a budget for July 1, 2025 - June 30, 2028 prepared based upon managements best estimates. These financial statements have not been subjected to an audit or review or compilation engagement, and no assurance is provided on them. Substantially all disclosures required by the cash basis of accounting have been omitted.

**EXHIBIT B**